[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution made returnable to the Judicial District of Danbury.
The parties each appeared with counsel at the time of trial and offered evidence and testimony.
The minor children were represented by their own attorney.
The evidence and testimony permits the following findings of fact as of the time of trial.
The parties were married at Danbury, Connecticut on May 7, 1989 and at least one of them has resided in the State of Connecticut for at least one year prior to the commencement of this action. The court has the requisite jurisdiction to proceed to judgment in this case.
The evidence permits the court to find that the plaintiff has established each of the allegations in her complaint, in checking the allegation that the marriage of the parties has broken down irretrievably. CT Page 8425
The court has taken into consideration the relevant provisions of §§ 46b-56, 46b-62, 46b-81 and other relevant sections of the General Statutes in arriving at the findings and orders hereinafter stated.
The parties have two minor children issue of this marriage, namely, Christian J. Hordos, born May 21, 1994; and Alycia D. Hordos, born November 21, 1995.
The parties entered into an extensive custody and visitation stipulation and agreement during the pendency of this action which the court will address hereafter.
The plaintiff, at the time of trial, was thirty-eight years old and holds a bachelor's degree in International Relations and Political Science from The American University. She subsequently applied her educational background to international business opportunities including a stint in Brazil with a business that exported Cashew nuts.
She made even greater use of her business skills in August, 1997 when she obtained the position of assistant director of a corporation in Western Africa. After weeks of preparations, she flew to her new "post" in Africa. That entailed opening an office including installation of computers and other furnishings and equipment necessary to oversee a staff of approximately sixty members.
The defendant and the parties' two minor children had made all necessary arrangements to follow the plaintiff to Africa sometime soon thereafter.
Not long after, as the plaintiff was leaving a business function, the jeep she was riding in was involved in a serious accident and the plaintiff sustained a number of serious injuries, some life-threatening, including a traumatic brain injury, which continues to cause her pain and disability to the present time.
She was air-lifted to a Parisian hospital and was treated.
The defendant made an emergency trip on the Concorde to Paris to be with her. Ironically, the plaintiff eventually concluded that the defendant's reaction to her hospitalization and her subsequent long-term convalescence indicated a lack of love, caring and affection on his part.
The parties were never as close or affectionate to each other after those months of recuperation by the plaintiff and the obvious diminution of her ability to share in and enjoy life's activities. CT Page 8426
From the plaintiffs perspective, the defendant grew more and more abusive, malicious and short-tempered with her.
The plaintiff has not been able to assume the highly responsible position she had attained prior to her devastating injuries and has devoted her efforts to charitable and social agencies in the Danbury area. At the time of trial, she was employed by United Way/Danbury/Children First and was receiving a gross weekly income of $220.50 which paid her a net income of $197.43.
She does have a Worker's Compensation claim pending, as a result of her job related jeep accident, which has no present value.
The defendant was forty-three years old at the time of trial. He is self-employed carpenter and reported his gross income on his financial affidavit to be approximately $790 per week, which nets him $499 per week. Among the deductions from gross income, the plaintiff listed "medical insurance of $81 per week."
The defendant testified extensively about the acquisition by himself and his parents of certain real property located at 113 King Street in Danbury. He further testified that the financing of that property and the tax payments were done without any financial contributions by the plaintiff. He also testified as to the "sweat equity," as it is known, which he put into that property and the house his mother now lives in.
He testified that he had resigned himself to the role of "Mr. Mom" when the plaintiff began her African employment. He would be the one to maintain the family home for the parties and their children in Africa. That, of course, was negated by the plaintiffs accident.
His recollection of the ways he reacted to the plaintiffs massive injuries differs considerably from her rendition. He testified that he was caring, attentive and actually very responsive not only to her physical needs but also her psychological and emotional wounds.
According to the defendant, it was the plaintiff who allowed the marriage to fail.
He maintains that the other important consequence of the emergency in Paris is the large credit card debt he incurred to fly to France on the Concorde out of desperation to reach his wife before she died.
The defendant offered evidence and testimony that his current income, as reported on his financial affidavit, is the most he can earn. The evidence elicited at trial concerning the salaries paid by the CT Page 8427 defendant's own brother to non-relative employees permits the court to find that the defendant's earning capacity is approximately $25 per hour and that the defendant is not currently exploiting that earning capacity.
There was considerable evidence and testimony offered at trial concerning the acquisition of real property located at 113 West King Street in the City of Danbury.
The property is described on a map captioned "Final Subdivision Plan Prepared for Frank Hordos, Jr. at Danbury, Connecticut" and dated August 5, 1996. (Defendant's Exhibit Q.) The property described in the map consists of two contiguous parcels of land (Parcel 2A and Parcel 2B) both having a common border on King Street. Parcel 2A, the easterly of the two, reportedly consists of approximately 5.430 acres; and Parcel 2B, the westerly parcel, consists of approximately 5.3 86 acres. Parcel 2A has on it an "existing 2 story frame dwelling." Parcel 2B is entirely open space. The map also features an "existing drive" running from King Street to the location of the "2 story dwelling" over a "right of way to Parcel 2A" which is situated almost its entire length on Parcel 2B.
The evidence permits the court to find that Parcel A and Parcel B are almost inextricably entwined geographically, financially and familiarly.
The history of the properties is that the two parcels were once one large piece of property acquired by the defendant and his parents prior to this marriage. The property was then subdivided and the defendant's mother's ("2 story") home was constructed on Parcel 2 A.
The defendant performed considerable work on the construction of the house. His mother contributed a substantial amount of money for the installation of the drive which runs to her home but is located coated primarily on the defendant's property — thereby conferring a benefit and enhancing the financial value to his property. The plaintiff testified that he owes his mother, Veronica Hordos, approximately $12,000 for the driveway and has listed that debt on his financial affidavit.
The property is also relevant for the reason that the plaintiff testified that approximately $14,000 of the marital assets were used to pay off outstanding real estate taxes on that parcel shortly after the parties were married. The defendant has denied that claim by the plaintiff and testified that the tax arrearage was paid by himself and his parents, his partners in the ownership of the land.
It is apparent to the court that the two properties are unique as a unit and any severance of ownership would have an overall negative effect CT Page 8428 on their combined worth.
The court further finds that the plaintiff is entitled to a portion of the value of Parcel 2B by virtue of her financial contributions to its expenses and debts and also by its existence as a marital asset. Having considered the evidence and testimony and the General Statutes cited previously, the court enters the following orders.
 ORDERS
A. CUSTODY AND VISITATION
The issues of custody and visitation were stipulated and agreed upon by the parties during the pendency of this action, as evidenced by their written agreement dated May 29, 2001 (court file #153) which the court (Petroni, J.T.R.) accepted and ordered.
The provisions of that stipulation regarding custody and visitation are extremely detailed and lengthy. For that reason, the court incorporates them by reference and orders that a copy of said stipulation be appended to this judgment.
B. CHILD SUPPORT
The court finds that the combined net weekly income of the parties is approximately $742.43. Pursuant to the Child Support Guidelines, the court finds that the plaintiff-mother's proportionate share of that total income is 51 percent. The defendant-father's proportionate share is 49 percent..
The child support obligation is found to be $258 per week. The plaintiffs weekly obligation is found to be $131.58, and the defendant's weekly obligation is found to be $126.42.
Additionally, the court orders that the parties share equally the cost of any necessary child care costs for the minor children.
The defendant is ordered to obtain medical, dental, orthodontic, and pharmaceutical insurance for the benefit of the minor children as it is available to him through his employment. If such insurance is not available to the defendant, then the plaintiff shall obtain it as it may be available to her through her employment. If neither parent can obtain such insurance through their employment, they each are required to obtain such insurance through the Husky program or through other insurance. In any case, they are each to contribute equally to the cost of maintaining such insurance. The provisions of § 46b-84 of the General Statutes CT Page 8429 shall be applicable to such insurance.
C. LIFE INSURANCE
For so long as the defendant is required to pay a child support obligation, he is required to maintain life insurance on his own life and to make the minor children, Christian and Alycia, the primary beneficiaries of such insurance to secure payment of those financial obligations. The defendant is to maintain the maximum amount of coverage available to him at a cost of $15 per week or $780 per year.
D. DEBTS AND LIABILITIES
Except where expressly provided otherwise in this judgment, the parties shall be solely responsible for their own debts and liabilities and shall indemnify and hold the other harmless from any claims of responsibilities arising therefrom.
E. TRUSTEE ACCOUNTS FOR MINOR CHILDREN
The plaintiff is found to be in possession and control of six bank accounts and/or funds created and existing for the benefit of the parties' two minor children, as set forth on her financial affidavit dated February 25, 2002.
The plaintiff is to remain in possession of those accounts and/or funds and hold them in trust for said minor children.
F. PLAINTIFF'S WORKER'S COMPENSATION CLAIM
The plaintiff shall retain her entire interest and claim to the Worker's Compensation claim, benefits and awards, as set forth on her financial affidavit dated February 25, 2002, without claim by the defendant.
G. PERSONAL PROPERTY
1. VEHICLES
 The plaintiff is awarded all right, title and interest in and to the 1994 Volkswagen automobile.
 The defendant is awarded all right, title and interest in and to the 1995 Toyota pick-up truck and the 1986 Yamaha motorcycle.
Each shall hold the other harmless from any and all obligations CT Page 8430 arising from the use or ownership of such vehicles.
The defendant shall retain the boat.
2. PERSONAL EFFECTS, JEWELRY AND HOUSEHOLD CONTENTS
Each party shall retain their own personal effects and jewelry.
 The household furnishings and furniture shall be divide equally between the parties. If there is any contest over the ownership or distribution of such property, this court retains jurisdiction of such issues and the matter shall be referred to the Family Relations office for resolution and, if necessary, to the court.
3. PLAINTIFF'S INDIVIDUAL RETIREMENT ACCOUNT (IRA)
 The plaintiff shall retain as her sole property the IRA listed on her February 25, 2002 financial affidavit in the approximate amount of $5,029.85.
4. BANK ACCOUNTS
 The plaintiff is awarded the balance remaining in the Union Savings Bank checking account in the estimated value of $800 as noted in the defendant's financial affidavit of February 26, 2002.
 The defendant is awarded any balance remaining in the Prime America Financial Services account listed in the parties' financial affidavits after the award of $8,000 to the plaintiff from said account.
F. TAX DEDUCTION
The plaintiff shall take the minor child, Christian Hordos, as an exemption for income tax purposes and the defendant shall take the minor child, Alycia Hordos, as an exemption for income tax purposes.
G. ATTORNEY'S FEES
Each party shall be solely responsible for any and all attorney's fees and any other fees and costs which they may have incurred as a result of this proceeding.
H. PERIODIC ALIMONY
Defendant is ordered to pay to the plaintiff the sum of $125 per week as periodic alimony. CT Page 8431
Said obligation shall continue until the earliest of the following events: death of either party; remarriage of the plaintiff cohabitation by the plaintiff, as that term is defined by statute; or five years from the date of this judgment.
I. REAL PROPERTY
Except as hereinafter provided, the defendant is awarded all right, title and interest in and to the real property consisting of 5.5 acres, more or less, known as 113 West King Street, parcel 2B, in the City of Danbury, Connecticut.
The plaintiff is awarded a one-third (1/3) interest in and a lien against the fair market value of said real property, which the court has previously found to be $180,000 as of the date of trial. The defendant is ordered to pay to the plaintiff a sum equal to the amount of said lien within five (5) years from the date of this judgment. Interest on this obligation shall accrue at the rate of 5 percent per annum.
The defendant shall hold the plaintiff harmless from all financial obligations arising from the use and ownership of said real property including, but not limited to, real estate property taxes, conveyance taxes, capital gains taxes, costs of construction, both past and future, including driveway expenses, and liability and property owner's insurance.
Having found that the marriage of the parties has broken down irretrievably, the court hereby decrees that the marriage is dissolved and the parties are single and unmarried.
BY THE COURT,
 ___________________ Joseph W. Doherty, Judge